Good morning, I'm Todd Schneider of Schneider & Wallace, and I represent Mr. Leonel Branton, in this case, the appellants, and Mr. Fusco, excuse me, who's in the courtroom with me today. I want to start, please, by talking about what this case is about. The issue in this case is really whether an airline can ignore the statutory scheme laid out by Congress for its own convenience. Here, American Airlines violated several important legal principles in conducting what are very invasive medical screenings in the process of hiring flight attendants. First, in violation of state and federal disability laws, American failed to make a bona fide offer of employment prior to launching into these extensive and intrusive medical evaluations. Before you get too far in, just to sort out the parties, does Mr. Leonel have claims under that part of your argument, or only Mr. Branton and Mr. Fusco? I understand the question, Your Honor, and it has to do with how the case was pled, and it's based on the statute of limitations. All of the parties do have the privacy claim. That's under the California Constitution. That's correct. Okay, so in terms of when we're analyzing whatever happened in these interviews and medical tests and questionnaires, that's really Mr. Branton and Mr. Fusco's. No, Your Honor. The California Constitution was pled specifically. No, I'm just talking about under the FIHA case. That's correct.  All nonmedical information, which reasonably could be evaluated prior to making the offer, has been evaluated. And Congress laid out this scheme for an important reason. People with disabilities, specifically hidden disabilities, need protection under the law. That's what Congress said in the Americans with Disabilities Act, and California said in the FIHA, that they're a protected class of people. Okay, assuming that's the case, then in the context of the facts of this case, where they brought them all to Dallas and they interviewed them and then immediately shifted them off to the medical questionnaire and the blood test, the two people who are in the FIHA part of the case, as I understand it, one of them, they didn't do the background check because they relied on a prior, and the other one the district court found had been completed before they made a final medical evaluation. So in that process, there was a conditional offer of employment before certain things were done, but it seems that at least in one of the cases, background, the nonmedical, was never done because they waived it, in effect. That's the other one the district court said was accomplished within some legitimate time frame. So in relation to Judge Graber's question, I'm interested in how it applies. Sure. And let me take each of those questions separately, Your Honor. As to Mr. Fusco, this is the gentleman that was a prior employee that they argued first time on summary judgment that they never did a background check on. There's certainly a question of fact as to whether that ever occurred. The letter that they gave to Mr. Fusco says we're going to do this background check on you. They then, of course, alleged in their summary judgment papers that it never happened. But I think the question is a legal question, and that is, what do they need to do at the time they make the conditional offer? What they needed to do at the time they make the conditional offer is say to these people, the only thing that's left to do in your case is the medical background check. You're now hired by American Airlines if you pass the medical check and nothing else. There's evidence in the record, a declaration from Dr. William Hortzman, who's a psychologist that works with people who are HIV positive. And what he says, and this is what Congress, I think, intended when they said that you needed to make somebody comfortable by saying all we're going to look at is your medical now, tell us about it. What he says is that someone with a catastrophic disease such as HIV is not likely to disclose to an employer if there's something left other than the medical background check. And the reason is because everybody knows that employers can easily discriminate against somebody and hide that reason behind a background check, behind we heard you were unruly on the airplane, behind any multitude of reasons. And Congress recognized this, as did the California legislature when they enacted the disability protection statutes. And what those statutes specifically say is that you can't ask the question unless it's the only question, unless that's all that's left. And what clearly happened here is American asked the question. There's no dispute about the fact that American asked the disability-related questions before they did the background check. Again, there's this piece about being unruly on the airplane. There's even a piece... And I take it there's also no dispute that your clients lied about some of the questions on the forum. There is no dispute that my clients are HIV positive. There's further no dispute that they did disclose that to American Airlines in response to a question from American Airlines. American Airlines medical department said you've got to increase MCV level. What's it about? All three of these people at that point. On the forum, all of your clients declined to say that they were taking regular medications, which can be quite innocuous. All of them declined to say that they had any form of blood disorder. They said no when they should have said yes. Is that correct? That is correct, Your Honor. It's also correct that on that forum it specifically said please don't answer any questions that are illegal under the laws of your state. Don't answer, not answer falsely. They did answer them, didn't they? They indeed did, Your Honor. I'm not here to tell the court that American doesn't have the right to get honest answers to medical questions from its flight attendants. They do. Let's assume that the question was unlawful. What should they have done? What should American have done? No, what should your clients have done if in fact to answer the question would have been an unlawful, it was an unlawful question? Certainly, Your Honor. If my clients were lawyers or they had had time to contact the lawyer, the advice would have been don't answer the question, write unlawful next to it. In the real world, people don't do that. Do you think the questions are unlawful? Are you taking regular medications? In the context, let's assume you have gotten to the point where you agree that it's okay to ask those kinds of questions, medical questions in general. Is that an unlawful question? It's an interesting question, Your Honor. Not one that we have pled or at least not one that we're pursuing at this point in the case. No, for the purposes of this case, it's a lawful question. It's a lawful question that's timed appropriately for the purposes of this case. Correct, Your Honor. As the Court's aware, at the District Court, we challenge the questions themselves. We decided not to take an appeal on the District Court's decision in that regard. But, again, the public policy in this case is can an airline, for its own convenience or the convenience of its applicants, simply ignore what Congress has told it it must do? What do you do with the phrase that says all the nonmedical information that reasonably could be gathered ahead of time? In view of the unusual process that the airline has set up here for everyone's convenience, really, or at least they're entitled to set it up centralized this way. Your Honor, I ask... But what is reasonable and what is not reasonable? Certainly, that's a judgment call. And I asked a question at deposition specifically aimed towards that. I deposed under 30-6 the manager of flight attendant recruitment for America and the person in all of American Airlines who does these things. And I asked her the following questions. This is in the record at page 630 and page 477. I asked her, quote, is there any reason why American couldn't do a background check prior to doing the medical examination? Answer, I think we could. Question, okay, there's no business reason why American didn't want to perform the medical examination after the background check? Answer, it's not a business reason. It just has to do with the applicants and trying to have it convenient for them. Now, she backed off from that later in a declaration on summary judgment, but at least we've got a triable issue of fact as to whether they could have reasonably gotten this information earlier. Remember, what we're talking about is a background check. We're also talking about medical information. It doesn't matter whether you do the background check before they come to Dallas or whether you wait and do the medical after they leave Dallas in some other laboratory in some other location. It doesn't matter whether you're going to decentralize the medical examination, does it? It is an interesting question. But even Ms. Bork-Schuchman says there's no reason why they couldn't do it other than convenience. This is an airline. They can fly people around. But more importantly, if the court were really concerned about the reasonableness, American had another out. And that is simply say, do you want to do your medical now or do you want to come back and do your medical? That gives people like Mr. Fusco the opportunity to go back, talk with his lawyer, talk with his psychologist, talk with whoever he wants to about what he's going to have to disclose and when he has to disclose it. There's no reason they couldn't have said to Mr. Fusco or any other applicant, you have a right to have your medical check done at the end of the process. Do you want to exercise that right? If he answered yes to that question, we wouldn't be here today. Because what we know is that when Mr. Fusco, Mr. Branton and Mr. Lionel were asked to disclose by American directly, they all disclosed. We also know from American's medical director that there was no medical reason that these people could not be flight attendants. Okay. Could I ask you to shift over to the privacy issue? I can. In terms of the blood test, it's not disputed that the American Airlines has a legitimate business interest in having a blood test. And that your clients did consent to a blood test, correct? My clients consented to a blood test. The answer to that is either yes or no. I'm going somewhere with this. Don't answer a question before it's answered. Yes, they did consent to having their blood drawn. Okay. All right. So they did consent to that. So then the next level of analysis, I think, for me anyway, is, okay, what blood test did they consent to? And your argument, as I understand it, is they consented to a blood test what? That is a CBC? Or what did they think the blood test was for? And what's the obligation on American to disclose the scope of the blood test? Sure. There's two answers to that question, depending upon which plaintiff you talk to. They all signed a form entitled consent to drug test. In other words, they knew that their urine and their blood was going to be taken for the purpose of drug testing. They all testified that they believed that that was a typical drug test. Were you using cocaine or marijuana or any other illicit substance? Mr. Fusco specifically asked American, what are you taking my blood for? Well, let's suppose the form said we're taking the blood test to test for, among other things, anemia. Okay. That would have been okay? Certainly to test for anemia, but that's not what American did. American did a complete blood count. So I guess the example would be, in the criminal context, if a very limited search warrant were issued by a court, and the police then went and searched the entire house, the entire property, the entire everything. That's what happened here. Isn't it more akin to saying you can search my desk, but I really only mean the papers that are on, you know, the first drawer on the left? Because once you say that it's okay to take the blood and you can test my blood, I don't know, I guess I don't understand what implicit limitation or explicit limitation you're arguing for. Sure. Your Honor, this Court talked about this very issue in the Norman Blood Saw case, which is at 135 F. 3rd, 1270. And in that case, the Court made it very clear that a limited consent with regard to very private issues is simply a very limited consent. But what limitation was there? You're saying that it was only for drug testing, in your view? That's the only thing they consented to? That's the only thing that was disclosed, Your Honor. So that's the only thing they could have consented to. Now, remember, American had these people fill out voluminous consent packets. But nowhere in there did they say we're going to be doing a complete blood count and testing for any number. I think there was one hundred. As long as their expectation of privacy, they were asked a lot of questions about all manner of things. It suggests that their blood tests might be used for any number of purposes. Again, from this Court, Your Honor, and the Norman Blood Saw case, and this is a quote at page 1270, that one has consented to a general medical examination does not abolish one's right to not be tested for intimate personal matters involving one's health, nor does consenting to giving blood or urine samples or filling out a questionnaire. So what this Court said in the Norman Blood Saw case is that because you consent in one area, even with regard to blood or urine sample, it's not a blanket consent. What if the disclosure had been that they were going to do a complete blood count at CBC and that they would be testing for elevated MCV levels, in connection with legitimate non-HIV related aspects? It would have been a much more difficult question, I think. Is there any use for the MCV elevated level, other than to detect HIV positive? According to plaintiff's expert, Dr. Gordon, they're 99 point, I think she said 99 percent of the time, an increased MCV level means that that's not my question, is there something that MCV reflects other than HIV positive? Dr. McInnes, American expert, has said that there's a number of conditions which it detects in addition to HIV. Of course, American didn't disclose they would be testing for any of those. Your position is that if they had disclosed and gotten consent to take a blood test that would reveal, would be a complete blood count, and would be testing for elevated MCV levels, then that would be okay under the California Constitution? It would get us to the next level of analysis, which would be, is it necessarily related to what they do? That is, whether the non-HIV positive was related. That's correct. And we haven't briefed or analyzed that, Your Honor. Okay. Thank you. Thank you, counsel. Your time has expired, but we will restore some rebuttal time, since we took a lot of it with questions. Thank you, Your Honor. May it please the Court, my name is Paula Champagne, and I represent American Airlines, and with me today is Enza Ricciardoni, counsel for American Airlines. This case is not about the HIV condition of these plaintiffs, because they could have had any other condition, and the outcome would have been identical. They could have had --. What does American do, though, by having created the situation where the issue is before us at all? American has clearly, in the face of, I think, fairly clear guidance from the ADA and the EEOC, compressed or conflated what is intended to be a two-step process into one unified process, so that to the extent there is any question in the mind of an applicant, whether he or she wants to consent or participate in something that is going to reveal very sensitive personal information, that they're basically in a rushed situation where they have to go ahead and fill out this form subject to the medical questionnaire and go through a blood test. What's the rationale for American Airlines to do that, other than, as counsel has argued, the convenience ostensibly for the applicants and maybe for Americans? American is conflating what is supposed to be a two-step process and creating a situation, it seems to be, that leads to this difficulty. Well, Your Honor, the medical department is a ten-minute drive away from flight attendant recruitment. So after applicants were given their offers of employment, they were informed there would be a medical examination, and when they got to the medical department, they were told there would be a blood test. And they had the opportunity at that point to ask questions of the nurse. Two of them did not ask questions. They had the opportunity to say, I don't think I want this test done today. I'd like it rescheduled. They had the opportunity to leave the medical department. They were not ---- They weren't asked any question to that effect, though, were they? I'm sorry, Your Honor? They weren't asked any specific question to that effect, as I understand it. They weren't asked, do you want to waive your rights under the statute or should we go ahead and have the medical exam right now? No, they were ---- What your opponent suggested might be a solution to this problem. Well, they were informed when they signed their employment applications there would be a medical examination, and they were told when they were made the offer of employment that there would be a medical examination. And ---- The difficulty, I think, arises from the fact that there also was going to be an additional background check done, and that is, it seems to me at least, the central point that opposing counsel is making, that the offer within the meaning of the statute wasn't bona fide because the background check wasn't done first. So theoretically, if the background check were done and everything else were the same, I think that's what he's arguing is required. So what is your response to that? Well, Your Honor, I don't ---- I think the district court properly found that American did obtain all non-relevant ---- I'm sorry, all non-medical relevant information it reasonably could have obtained and analyzed prior to making the offer. There was only the medical exam. It made the offer before it had done the background check. They made the offer before the medical examination and the background check. Right. And it is our position, and the district court so found, that American obtained all other information it reasonably could have prior to the offer. Why wasn't it reasonably possible to do the background check and complete that step before the medical examination? Well, Your Honor, it was possible that would involve either applicants remaining in Fort Worth at their own expense for three to seven days while the background check was completed, or it would involve them flying back home and returning on another occasion. For a medical exam? For the medical examination. Why can't American do what insurance companies do, which is have the medical exam done at the remote location, you know, wherever the person lives? Well, there are several reasons for that, Your Honor. Are these reasons in the record? These reasons are not in the record. Okay. So we're basically, the problem I have, I understand American's effort to accommodate here, but coming back to the concern of the statute, which is to address the problem that we're confronting here, which is why is it that these people have had their employment offers canceled? Your position is, well, as a matter of fact, it was done because they didn't tell the truth on the form, and we've used this process to invalidate what we contend is a legitimate offer, and yet under the structure that the ADA and the FEHA is concerned with is that people who have very personal disabilities shouldn't be required to disclose them until it is clear that it's up to them whether or not they want to proceed to this legitimate offer. Why should I as an applicant have to disclose to American Airlines and their medical staff and whomever else might get their hands on it something that is highly personal and controversial in this society, unless I know I really am going to get that job? And that's why all of the non-medical stuff is supposed to be completed, so that if at the end of the day American decides not to give me the offer, then at least I have a shot at proving it's because they discriminated against me or correlatively, in my view anyway, that I took a shot at getting this job, but it was a real job offer and I didn't just wind up disclosing my HIV-positive condition, which is highly controversial. Well, first of all, Your Honor, number one, that medical information was kept extremely confidential. Well, you say so, but we're looking at it from the structure of the law. I understand. As a factual matter, American may have good and sufficient reasons it could be explicated, but I don't, on the record that I see, quite understand that it's all there. And in terms of what the structure of the law is, which is what we're concerned about at this stage, it does pretty clearly require a two-step process, which American, and I'm not even suggesting this for bad reasons at all, but that has conflated. And as a result, we're trying to parse what human behavior should have been in this conflated process. Well, Your Honor, I don't believe the statute specifically envisions or indicates a two-step process. The case law certainly does. The O'Neill case certainly does. Out of the Seventh Circuit, the EEOC regulations certainly talk about, again, the standard being not all information be considered prior to a medical examination, but just all information which the employer reasonably could have obtained and analyzed. But also, with respect to Mr. Schneider's point about a test being a ruse, a way to find out a person's hidden medical condition or disability, American's test wasn't that. Of the 54 HIV-positive people who were honest during the medical examination and disclosed their condition, 49 of them successfully completed those medical examinations. And of the 54 who disclosed, and this is on the record, not one was disqualified because of a background check. And in addition, American's notice to applicants who failed to disclose says flat out, you failed to be honest and forthcoming during your medical examination, and as a result, we are rescinding your offer. We do not discriminate under the Americans with Disabilities Act. We make reasonable accommodation, but honesty is important to us. So it can hardly be characterized as a ruse when American up front advises applicants precisely the reason why they're rejected. And it is our position that American met that reasonableness standard by virtue of the fact that the medical test was centralized. The laboratory and equipment are there. American does its CBC in-house. The other medical facilities at other airports or hubs don't have those, don't have that type of equipment. Just the record disclosed, other than the lapse of time, what would be unreasonable about gathering all of the background information before completing a medical examination? What would be unreasonable, Your Honor, would be the impact on American with respect to the competition it faced during the four years in question, with respect to having applicants take off yet another day of work, because many applicants were already employed at the time they applied. The fact that 10 to 20 percent of applicants to whom American made offers of flight attendant training turned down those offers because they already had accepted a job with another airline, and another 20 percent of applicants refused, or I'm sorry, there were no shows for American's flight attendant training classes when they'd already confirmed that. Well, the key point is whether or not you keep the medical examination centralized, isn't it? If you could decentralize it, then you wouldn't have this problem, would you? If it were decentralized, that would involve a number of things, such as the purchase of laboratory equipment, hiring of technicians to go ahead and do it. Is that on the record? Is that information in the record? That's not on the record, Your Honor. But the outcome, however, would have been the same had these applicants not disclosed a condition such as tuberculosis. I mean, it's undisputed on the record that American rescinds or withdraws its conditional offer of employment based upon an applicant's misrepresentation, omission, or falsification of information during a medical examination. And with respect to consent, only one plaintiff, Mr. Fusco, has an invasion of privacy claim. The other two do not. But he consented, as did all of them, to the medical examinations by virtue of being told there would be a blood test, and by allowing their blood to be drawn. Well, we do have our own precedent in this circuit that suggests consent to a blood test isn't a blanket opening to test for anything that the lab decides is relevant to it. So if you're going to test for blood and it's important to get consent to a full panel blood test, what's the burden on American to disclose that that's the nature of the blood test? Well, Your Honor, with all due respect, it's my understanding since the unlawful inquiry was made under the FEHA and the consent issue or privacy issue arises under the California Constitution, I know of no case requiring that an individual complete or assign a written consent to a routine blood test. Well, you say routine, but isn't that the issue? What is a routine blood test? A complete blood count is a routine blood test given by doctors and clinics and hospitals throughout the United States. It's the initial screening step. It's not a test for any specific disease or condition, as the plaintiffs have erroneously argued in their brief. And is that in the record the nature of a CBC, that that is the standard? Your Honor, there are many pages of that on the record, and it should be found in both Dr. McInnes's declarations. And does the elevated, what is it, the MHV or all these initials throw me, but the elevated count that identifies HIV positive, that's part of the CBC normal routine? The complete blood count by no means identifies an individual who is HIV positive. What about the MCV? The complete blood count, the MCV component of the complete blood count identifies some 17, it doesn't identify some 17 conditions. It only indicates whether someone might have such a condition. And all the, at page 730 of the excerpt of record is a complete blood count, and all it is is a list of the components of the CBC, a number showing that individual's blood count, volume or size of blood cells, and then a normal range. And if the number assigned to that individual is outside the normal range, then that triggers American's medical department to write to that applicant and say, gee, your results were outside the normal range, please see your physician, and give us some more information. So by no means does the CBC test impermissibly as the test, as the Lawrence Berkeley Laboratory did in Norman Blood Saw. Is one of the purposes of the drawing of blood to determine the reaction of the individual to altitude? Well, the CBC is an indicator of anemia, Your Honor, and one has to have an oxygen-carrying capacity in one's blood cells in order to be able to withstand rapid decompression. If that happens, which it does happen, I mean, we all know now that, I mean, we all know that flight attendants do a lot more than push a beverage cart down an aisle. So if there is an emergency and there's a rapid decompression in the cabin, someone with anemia is much more likely to lose consciousness than someone without anemia. And you don't want a flight attendant keeling over in the aisle when you need that flight attendant to administer first aid, to calm frightened passengers, to open up the emergency doors, to get out the safety equipment such as slides or rafts. Your time has expired. Do you want to wrap up in one final sentence? I respectfully request the Court to affirm Judge Hamilton's decision, Your Honor. That's a good wrap-up from your perspective. We'll give you two minutes for a vote. Thank you. Thank you, Your Honor. Two minutes. I've never done anything in two minutes in my whole life, but I will today. The discipline of lights we found out. According to Dr. McInnis, defendant's medical director, the complete blood count was intended to show indicia of over 100 medical conditions, intended to show indicia of over 100 medical conditions, including cancer, sickle cell anemia, disorders of the immune system, and conditions solely related to pregnancy. That's at the record at page 645 through 649. According to the head nurse at American Airlines, Ms. Champagne told you that regardless of the condition, if they lied about it, they wouldn't have been hired. Nurse Doom at American Airlines says, and this is at the record, various points in the record, question, there wasn't a blanket rule that said if anyone falsified any information, then there would be automatically a nondisclosure and therefore not hired. This is at 815 through 816 of the record. Her response was no. She tells us that failure to provide information regarding, for example, dental treatment or pap smears was not considered a nondisclosure by the defendant. That American takes this on a case-by-case basis and decides whether you've made a major omission of a significant condition or problem. So this notion that they didn't do anything wrong because anyone would have been treated the same simply isn't true unless you have a significant condition, in their view, that's chronic. Well, don't you have to have some kind of qualification of that sort? Well, and I think that's. Any kind of an accidental oversight would disqualify you from employment, I would think. And that brings us to exactly why Congress said that this particular protected class, people with chronic conditions, have the right to know what they're consenting to and to only disclose once they have been given a guarantee by the employer that there will be employment if they do so. What happens with American is there's a background check. How could someone with HIV know that this wasn't yet again going to be disclosure with no purpose? The lights have become somewhat random, but I think you're probably about used for two minutes. May I? Two points that were raised very quickly. The first is that two of the plaintiffs don't have invasion of privacy claims. It's not true. They were pled under Section 17200 of the Business and Professions Code, California Business and Profession Code, as to two of the plaintiffs. The reason for that is simply statute of limitations, Your Honor. But all three plaintiffs are making the privacy claim. Finally, counsel has. I just need to sort that one out because the Business and Profession Code piggybacks on some violation of law, so it's not an independent violation of law. That's correct. So what's the violation of law if they don't have an independent privacy claim? It would be California privacy, Your Honor, just because they haven't pled it as such. The statute of limitations under 17200 is a four-year statute of limitations. It carries its own statute of limitations regardless of the underlying statute of limitations as to the underlying claim. Anyway, it's a procedural matter, not that they don't have the claim. Finally, counsel has given us many what-ifs about why it might be easier for American or more convenient. The record is devoid of any information of what it would cost American to do the medical checks elsewhere, to do the background checks after the medical checks. And certainly there would be no cost to American whatsoever of simply giving the applicant the choice of when to disclose. And I thank you for your time. Thank you very much. The case just argued is submitted, and we appreciate the arguments of both parties. We'll next hear counsel in Boyd v. Newland. Give everyone a chance to.
judges: Cudahy, Graber, Fisher